**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | |
| ANGEL CRUZ a/k/a "Papo" | ) ) ) | Docket No. 17-cr-40045-TSH |
| Defendant | ) ) ) | |

# MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS

## Introduction

On October 5, 2016, Angel Cruz ("Defendant") rented a motor vehicle from Avis car rental in Maynard, MA. He listed the cooperating witness in this case ("CW") as an authorized driver. Cruz delivered the vehicle to the CW on October 5, 2016 along with approximately $25,000 in cash and instructed the CW to drive the vehicle to an address in California, deliver the money in exchange for narcotics, and return the narcotics to Fitchburg, Massachusetts. On his way back from California, Ohio State Highway Patrol Trooper Beynon ("Trp. Beynon") pulled over the CW driving alone in the vehicle. Trp. Beynon's K9 alerted outside the vehicle, the vehicle was searched, and narcotics were found. The operator became a cooperating witness and agreed to be part of a controlled delivery of the drugs to the Defendant in Fitchburg. In preparation for the controlled delivery the police applied for, and received a GPS warrant to track the vehicle, and a warrant to place a video recorder inside the vehicle. The application for the video recording

specified video only and not audio recording. Despite the requested limitation for video only, the recorder captured video and audio of the CW delivering the drugs to the Defendant.

The Defendant seeks to suppress the stop and search of the motor vehicle in Ohio, and the video and audio recording of the delivery. For the reasons set forth, those motions are granted in part, and denied in part.

## Background

On October 17, 2016, Ohio State Highway Patrol Trooper Beynon pulled over the vehicle driven by the cooperating witness ("CW") traveling eastbound in the center lane on Rte. 70 in Ohio. The Defendant, Angel Cruz had rented the vehicle in Massachusetts and the CW was listed as an authorized driver of the vehicle. The CW was the only individual in the vehicle, and was nervous and trembling, and claimed that he was traveling from St. Louis to Massachusetts. Trooper Beynon had his narcotics trained K-9, Miki on the scene.

While a second trooper completed the vehicle and license checks, Beynon took Miki around the vehicle to sniff. The K-9 alerted to the right side of the vehicle at the seam between the passenger and rear passenger door. Trooper Beynon asked the CW to exit the vehicle and placed him in the back of the patrol cruiser. In the ensuing search of the vehicle Beynon discovered a small amount of marijuana under the driver's seat as well as a kilo of cocaine and a kilo of heroin. The heroin and cocaine were found in a hide constructed inside the center console. At the scene, the CW told the officers about Defendant's role in the venture, agreed to cooperate, and allowed the police to monitor his calls to the Defendant. The CW also agreed to perform a controlled delivery of the drugs to the Defendant.

On October 18, 2016 the officers obtained a GPS warrant to track the vehicle as well as a warrant for a video recorder to place inside the Vehicle. The officers did not seek audio

recording because they did not want to apply for a Title III wiretap and clearly stated on the warrant application that the recording would be video only.

Despite the warrant, the recording device inside the vehicle captured both audio and video of the CW delivering the drugs to the Defendant in Fitchburg.

## **Discussion**

*Standing*

The Defendant claims to have standing to challenge the search of the vehicle, even though he was not in the vehicle at the time of the stop and had not been in possession of the vehicle for almost two weeks. A Defendant has standing to challenge a search if his own Fourth Amendment Constitutional Right has been infringed. In order to have a Fourth Amendment interest in the place searched, he must show that he had a reasonable expectation of privacy in the vehicle which was searched. *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018). Factors to be considered include possession or ownership of the area searched or the property seized, ability to control or exclude others use of the property, and a subjective expectation of privacy. *United States v. Lochan*, 674 F.2d 960, 965 (1st Cir. 1982). The Court must also consider whether such subjective expectation is one that society is prepared to recognize as objectively reasonable. *Katz v. United States*, 389 U.S. 347, 361 88 S. Ct. 507 (1967).

In *United States v. Quinn*, the 9th Circuit held that a defendant had a legitimate expectation of privacy in his boat and standing to challenge its search even though he was not present during the search. 751 F.2d 980, 981 (9th Cir. 1984). This finding was based on factors which included ownership of the boat and a possessory interest in the marijuana seized. This possessory interest arose from his joint venture with a second defendant for the smuggling of marijuana. Significantly, that boat, when searched, was returning from a delivery of marijuana in furtherance of the joint

venture. "Where a joint venture is being pursued, the mere fact of a joint venturers absence from the place searched is insufficient to establish abandonment or relinquishment of the property seized." *Id.* (See *United States v. Johns*, 707 F.2d 1093 (9th Cir. 1983)). Lastly, the fact that it was necessary to take apart a portion of the boat to find the marijuana indicates that reasonable precautions had been taken to preserve privacy. *United States v. Quinn*, 751 F.2d 980 (9th Cir. 1984).

Although Cruz was not the owner of the vehicle, it was rented in his name and he had a possessory interest through the rental agreement. Similarly to *Quinn*, Defendant was part of a joint venture with the CW who was an authorized driver of the vehicle. When the vehicle was searched, it implicated the joint venture. The court should "look, in short, to whether or not the individual thought of the place as a private one and treated it as such." *United States v. Almeida*, 748 F.3d 41, 47 (1st Cir. 2014). In this case, the center console was disassembled to hide the drugs indicating that precautions had been taken to preserve privacy.

The Government points to *U.S. v. Blanco,* 844 F.2d 344, 349 (6th Cir. 1988) which concluded that the renter of a vehicle who did not keep the vehicle in his possession, handed over his only set of keys, and was not able to exclude others, had no expectation of privacy in the vehicle.. *Blanco* can be distinguished by the facts of this case. Although Defendant did give physical possession of the vehicle to the CW, he still had the right to exclude others. "One of the main rights attaching to property is the right to exclude others," and "one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of the right to exclude." *Byrd v. United States*, 138 S. Ct. at 1518 (2018). Defendant had control and was responsible for the vehicle. No one other than Defendant and CW were legally able to drive the

vehicle per the terms of the rental agreement.[1] That the Defendant was not physically present in the vehicle does not negate his rights under the contract to exclusive possession of the rental vehicle. None of Defendant's behavior manifests an abandonment of his claim as the lawful possessor. Furthermore, Defendant's communications with the CW (texts, calls, money wiring for costs), support his argument of a possessory interest.

Standing requires that the defendant's expectation of privacy also be of a type that society recognizes as objectively reasonable, As explained in *Byrd*, "'wrongful' presence at the scene of the search would not enable a defendant to object to the legality of the search." 138 S. Ct. 1518 (2018). (citing *Rakas v. Illinois*, 439 U.S. 128 141, n. 99 S. Ct. 421(1978)). A car thief, although in possession or control of the vehicle, does not have an expectation of privacy that society is prepared to recognize as reasonable. Unlike a car thief, Defendant has a rental agreement which enabled him to have temporary legal possession of the vehicle. Even though Defendant did not own the vehicle, people who rent a vehicle have an objective expectation that they have exclusive rights to the vehicle from all other persons. Defendant's possessory interest puts him in a position analogous to the owner of a vehicle for Fourth Amendment analysis. *United States v. Powell*, 929 F.2d 1190, 1196 (7th Cir. 1991). Defendant had an objectively reasonable expectation of privacy and I find that he has standing to challenge the search.

*The Search of the vehicle*

The stop and search of the vehicle was recorded on Trooper Beynon's dash cam and admitted into evidence at the Motion to Suppress hearing. Trooper Beynon testified that he walked Miki counterclockwise toward the rear end of the car. Miki did not sniff the back area or seam of the

---

[1] The rental agreement stated "[n]o additional drivers allowed without prior written consent." The rental agreement term ran from October 5, 2016 to October 12, 2016. The stop of the vehicle occurred on October 17, 2016.

5


vehicle so Trooper Beynon did a "tap back" which directed the K-9 to go back to the last area and sniff. Trooper Beynon then got in front of the K-9 and continued to work the vehicle. As the two came around the back-right corner, Miki's head snapped to the left and there was tension on the leash. Once Miki got to the middle seam between the passenger and back door, he squared off and began to indicate. Trooper Beynon passed Miki on the right, walked in front of him, extended the leash and presented the next area for him to sniff. Miki did not go any further and began to scratch at the seam which was a final response that he had located the target odor of narcotics. The resulting search of the interior motor vehicle uncovered the marijuana, heroin, and cocaine.

The Government introduced the training certifications of Miki and Trooper Beynon from the Ohio Peace Officer Training Commission ("OPOTA") and the Office of the Attorney General for Ohio for successful completion of the Patrol Related Canine Unit Evaluation and the Special Purpose Canine Unit Evaluation. These certifications included training records and the training guidelines that they followed. Trooper Beynon was assigned to Miki in October 2012 and took a 200-hour training course conducted through over a six-week period. The course included lectures and working with the K-9 on-a-daily-basis. Miki had already been trained as a dual-purpose canine, and was specially trained in four odors: heroin, marijuana, cocaine, and methamphetamine. After Trooper Beynon received his Gold Shield Training certification, he received OPOTA certification.

The Defense called K-9 expert Mary Chablk as a witness to dispute the reliability of the K-9 team. Ms. Chablk qualified as an expert witness in the science of canine detection, training detection canines, and detection canine handlers for narcotics and human remains. She testified that it was her professional opinion that the reliability of the K-9 team was questionable, and that

the K-9's alert to the vehicle was not a reliable source for the probable cause needed to search the vehicle.

Trooper Beynon and his K-9's certifications and trainings were sufficient to establish the reliability of the K-9's alert. "A positive indication by a properly trained dog is sufficient to establish probable cause for the presence of a controlled substance." *United States v. Howard*, 621 F.3d 433, 447 (6th Cir. 2010). In *Florida v. Harris*, the lower court addressed records of a dog's field performance. 133 S.Ct. 1050, 1056, (2013). Regardless of any other evidence offered to establish that canine's reliability, "the absent field performance records will preclude a finding of probable cause." *Id.* The Supreme Court rejected this rigid requirement and held that "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Id.* At 1057. Following the reasoning of the Supreme Court, Ms. Chablk's opinion about deficiencies in the dog's performance during this incident, and any questions of prior field performance, while probative will not be the deciding factor of whether the K-9 is reliable. "If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." *Id.*

The *Harris* court held that in the absence of certification, if the dog has recently and successfully completed a training program that evaluated his proficiency in locating drugs, his alert is reliable. Ms. Chablk did not dispute whether OPOTA certification, Gold Shield Training, and subsequent training with Highway Patrol were satisfactory. In addition to Trooper Beynon and Miki's certifications, the K-9 team conducted maintenance training on a regular basis. As explained in *Harris*, "law enforcement units have their own strong incentive to use effective training and certification programs, because only accurate drug-detection dogs enable officers to

locate contraband without incurring unnecessary risks or wasting limited time and resources." The K-9 team went beyond the State of Ohio's training requirements and provided written documentation of the success of the K-9.

"Even assuming a dog is generally reliable, circumstances surrounding a particular alert may undermine the case for probable cause—if, say, the officer cued the dog (consciously or nor)." *Florida v. Harris*, 133 S.Ct. at 1058.  Ms. Chablk claims that Trooper Beynon was cuing the dog to alert.  She points to the dash cam footage where the trooper exhibited cuing behavior by performing the tap back.  When the trooper initiated the tap back, the K-9 went back to that area to sniff where he missed.  The K-9 did not alert at that time.  When the trooper presented the next area for the K-9 to sniff, he stopped where he was and did not go to the next area Trooper Beynon presented.  This shows that the trooper did not intend to cue the K-9 to alert in this area and wanted him to continue to sniff onward.  The K-9 stopped on his own and began indicating. I find that the canine "sniff and alert" provided the request probable cause to enable the police to search the vehicle.

*The video and audio*

The Defendant argues the video and audio of the controlled delivery should be excluded because the audio recording was beyond the scope of the warrant and the invasive nature of the device invokes the fundamentals of the Fourth Amendment exclusionary rule.  Defendants argue that total exclusion of the evidence is appropriate to "instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused." *Michigan v. Tucker,* 417 U.S. 433, 445 (1974).

Where law enforcement's willful or negligent conduct has deprived a defendant of some right, the exclusionary rule's deterrent purpose is properly served by exclusion of all evidence gained as a result of such conduct. *Michigan v. Tucker*, 417 U.S. 433, 94 S. Ct. 2357 (1975). It is well established that the exclusionary rule applies to evidence obtained in violation of the Fourth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684 (1961).  Further, the rule's purpose "is to deter – to compel respect for the constitutional guaranty in the only effectively available way – by removing the incentive to disregard it." *United States v. Calandra*, 414 U.S. 338, 347, 95 S. Ct. 613, 620 (1974) (citing *Elkins v. United States*, 364 U.S. 206, 217, 80 S. Ct. 1437, 1444 (1960)).

The government has agreed to mitigate the effects of its mistake by not offering the audio of the Defendant from the point where he took possession of the rental car from the CS and drove away.  The Government does seek to introduce statements that the CS made while in the car alone, and a conversation between the CS and the Defendant which occurred outside of the car prior to the Defendant entering the car and driving away.  The government argues that this portion of the audio recordings involving the CW are authorized by the one- party consent doctrine.  Regardless of whether the statements are so authorized, they were part and parcel of conduct which deprived the Defendant of his Fourth Amendment rights. Since the exclusionary rule is calculated to "prevent, not to repair." *See Calandra*, 414 U.S. at 347, 80 S. Ct. ,  I am excluding all audio recordings  during the delivery of the car to the Defendant, including those involving the CW.

The government chose not to apply for a warrant authorizing audio recording in order to avoid the stringent requirements of a Title III wiretap. Unlike most one party consent cases where the recording device is placed on the CW's person or is an interception of a phone call the

CW was a party to, the government applied for, and received a recording device in the rental car knowing it would record only the defendant once the car was turned over to him. *See United States v. Caceres*, 440 U.S. 742, 99 S. Ct. 1465 (1979) (Finding that audio recorder placed on person of IRS agent was authorized by one party consent); *United States v. Conley*, 531 F.3d 56 (1st Cir. 2008) (Finding no Wiretap Act violation where government monitored phone call of defendant and inmate with the inmate's consent). In so doing, the government negligently violated the defendant's Fourth Amendment rights. Suppression of all audio is a reasonable sanction to deter this behavior and is proper because its genesis was the negligent activation of the audio recording device.

The video recording, however, is not excluded because it was authorized by warrant. While suppression of the video may further deter disregard for Fourth Amendment rights, the costs of exclusion are higher for the video than the audio. *See Davis v. United States*, 564 U.S. 229, 237, 131 S. Ct. 2419, 2422 (2011) ("For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs"). The government only intended to record video of the delivery of the rental car and received the appropriate warrant. Suppression of the video because of the negligent audio recording would outweigh any additional deterrence. *See Davis,* 564 U.S. at 237, 131 S. Ct. at 2422 ("Exclusion exacts a heavy toll on both the judicial system and society at large"). Accordingly, I find that all audio recorded in the Equinox during the controlled buy is suppressed while the video recording is not suppressed.

## Conclusion

For the reasons set forth above, Defendant's Motions to Suppress are granted in part and denied in part.   I grant the Defendant's Motion to Suppress any audio from the recording devise, and deny suppression in all other respects.

**SO ORDERED**

                                                    /s/ *Timothy S. Hillman*
                                                    **TIMOTHY S. HILLMAN**
                                                    **DISTRICT JUDGE**